**THIRD DIVISION
DOYLE, P. J.,
WATKINS, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 23, 2024**

# In the Court of Appeals of Georgia

A22A0663. GEORGIA DIVISION, SONS OF CONFEDERATE VETERANS v. DOWNS.

DOYLE, Presiding Judge.

The Georgia Division, Sons of Confederate Veterans ("SCV"); The Confederate Memorial Camp #1432 of the Sons of Confederate Veterans ("Camp #1432"); Richard Kevin Straut; Thomas M. McConnell; Eric Robert Howell; Joseph Newton; and Phillip J. Autrey (collectively, "the plaintiffs") filed suit against Bryan A. Downs, in his capacity as the City Attorney for the City of Decatur ("the City"), and the DeKalb County Commissioners ("the County"), individually and in their official capacities (collectively, "the defendants"), seeking an order setting aside a June 2020 order removing a Confederate monument from the City's square. The trial court dismissed the complaint, and on appeal, this Court affirmed on the ground that

the plaintiffs lacked standing,[1] relying on this Court's opinion in *Sons of Confederate Veterans v. Newton County Bd. of Commrs.*[2] ("*Sons of Confederate Veterans I*"). The plaintiffs filed a writ of certiorari, and while the writ was pending, the Supreme Court issued *Sons of Confederate Veterans v. Henry County Bd. of Commrs.* ("*Sons of Confederate Veterans II*"), which reversed in part *Sons of Confederate Veterans I.* The Supreme Court then granted the plaintiffs' writ of certiorari in this case, vacated this Court's judgment affirming the dismissal of the plaintiffs' claims for lack of standing, and remanded for consideration of the plaintiffs' arguments in light of its decision in *Sons of Confederate Veterans II*.[3] For the reasons that follow, we affirm in part the trial court's order dismissing the claims of SCV, Camp #1432, Straut, McConnell, and Howell; vacate in part the trial court's order dismissing the claims of plaintiffs Newton and Autrey; and remand this case for the trial court to consider the threshold jurisdictional question of whether sovereign immunity bars the remaining plaintiffs' claims.

---

[1] See *Georgia Div., Sons of Confederate Veterans, Inc. v. Downs*, 365 Ga. App. 280, 282-283 (878 SE2d 130) (2022) ("*Downs I*").

[2] 360 Ga. App. 798 (861 SE2d 653) (2021).

[3] 315 Ga. 39 (880 SE2d 168) (2022).

As set forth in *Downs I*, the record shows that

on June 10, 2020, the City sued the County in DeKalb County Superior Court, seeking an order directing the County to remove a Confederate monument (which the City characterized as a public nuisance) from the City square ("the Prior Action"). On June 12, 2020, following an emergency hearing, the trial court granted the motion, ordered the County to relocate the monument to a secure location no later than June 26, 2020, and the County complied with the order. The City moved for judgment on the pleadings, which motion the County did not oppose, and on September 28, 2020, the court entered a final order and judgment, ordering the County to maintain the monument in a secure location and prohibiting its return to the City square at any time. The final order and judgment was not appealed.

On June 17, 2021, approximately nine months after the final judgment in the Prior Action, the plaintiffs sued the City and the County in the instant case, seeking to restore the monument to the City square and set aside the June 12, 2020 order.[4]

---

[4] (Citation omitted.) *Downs I*, 365 Ga. App. at 281.

The defendants filed answers and motions to dismiss, alleging, among other arguments, that the plaintiffs' claims were barred by sovereign immunity[5] and that the plaintiffs lacked standing.

The trial court granted the defendants' motions to dismiss on the grounds that the plaintiffs lacked standing to bring this action and that the plaintiffs, who were not parties to the Prior Action, failed to meet the requirements of setting aside a judgment under OCGA § 9-11-60. The trial court did not, however, rule on the defendants' argument that sovereign immunity barred the plaintiffs' claims.

The plaintiffs appealed, arguing that the trial court erred by ruling that they lacked standing; by finding that they could not bring an action to set aside the orders in the Prior Action under the provisions of OCGA § 9-11-60 (a), (b), and (c); by finding that the trial court in the Prior Action had authority under OCGA § 41-1-2 to "abate the public nuisance"; and by dismissing their case because the orders in the Prior Action were void. Relying on *Sons of Confederate Veterans I*, this Court affirmed on the ground that the plaintiffs lacked standing.[6] While the plaintiffs' petition for writ

---

[5] The County also raised the defense of official immunity to the Plaintiffs' claims against them individually.

[6] 365 Ga. App. 280, 282-283.

of certiorari was pending, the Supreme Court of Georgia reversed in part *Sons of Confederate Veterans I*, holding that while the private citizen petitioner in that case did have standing to pursue injunctive relief, the Sons of Confederate Veterans groups lacked standing.[7] The Supreme Court then granted the plaintiffs' writ of certiorari in the instant case, vacated this Court's judgment, and remanded for consideration of the plaintiffs' arguments in light of its decision in *Sons of Confederate Veterans II*.

1. Plaintiffs argue that the trial court erred by ruling that they lacked standing to bring this action. In *Sons of Confederate Veterans II*, the Supreme Court addressed what it identified as "a discrete and important threshold question: whether the Georgia Constitution requires a plaintiff to establish some cognizable injury to bring a lawsuit in Georgia courts, i.e., to have standing to sue, separate and apart from the

---

[7] See *Sons of Confederate Veterans II*, 315 Ga. at 63-66 (2) (d) (i), (ii). On remand, this Court issued its second opinion in that case, again affirming the trial court's dismissal of the individual petitioner's claim for injunctive relief, this time on the ground that it was barred by sovereign immunity, which was an alternate basis for the trial court's dismissal. See *Sons of Confederate Veterans v. Newton County Bd. of Commrs.*, 368 Ga. App. 511, 512-517 (890 SE2d 468) (2023) ("*Sons of Confederate Veterans III*").

statutory authorization to bring suit."[8] The Court answered the question affirmatively, concluding as follows:

> to invoke a Georgia court's "judicial power," a plaintiff must have a cognizable injury that can be redressed by a judicial decision. . . . Courts are not vehicles for engaging in merely academic debates or deciding purely theoretical questions. We "say what the law is" only as needed to resolve an actual controversy. To that end, only plaintiffs with a cognizable injury can bring a suit in Georgia courts. Unlike federal law, however, that injury need not always be individualized; sometimes it can be a generalized grievance shared by community members, especially other residents, taxpayers, voters, or citizens.[9]

That "generalized grievance" can occur when a local government fails to follow the law, as Georgia has long recognized that government at all levels has a legal duty to do so, and the violation of that duty confers standing to sue upon community stakeholders, even in the absence of an individualized injury.[10] Based on this, the Supreme Court held that the individual plaintiff, who brought her suit as a private citizen of the county in which the board of commissioners voted to remove a

---

[8] *Sons of Confederate Veterans II*, 315 Ga. at 39.

[9] Id.

[10] Id. at 40.

confederate monument, had standing to sue for injunctive relief, even if she suffered no individualized injury because of the duty owed to her by her local government to follow the law.[11] The Supreme Court also held, however, that the Sons of Confederate Veterans groups lacked standing because they

> did not allege that they [were] citizens, residents, or taxpayers of any county, much less the counties that they sued. They . . . set forth no allegations showing that they [were] community stakeholders, such that the duty created by OCGA § 50-3-1 [was] one that [was] owed to them. Therefore, any violation of OCGA § 50-3-1 [did] not result in a cognizable injury to the Sons of Confederate Veterans groups; and, as a result, they [did] not have independent, direct standing as organizations.[12]

Applying that framework to the instant case, we look to the seven plaintiffs in this case to determine the question of standing as to each. In their complaint, plaintiffs allege as follows:

> Plaintiff Sons of the Confederate Veterans is an organization that honors the patriotic military service of those Georgians who fought in the war of 1861-1865 ("the War"). It has numerous local camps of which Plaintiff

---

[11] Id. at 63-65 (2) (d).

[12] Id. at 66 (2) (d) (ii).

The Confederate Memorial Camp #1432 of the Sons of Confederate Veterans (hereinafter "Camp #1432") is active in DeKalb County [sic] is a sub-unit highly concerned with the preservation and protection of historical monuments and markers commemorating the histories and the valor of citizens of DeKalb County.

Plaintiffs Richard Kevin Straut, Thomas M. McConnell, Eric Robert Howell, Joseph Newton, Philip J. Autrey, are all members of Camp #1432; Plaintiffs Newton and Autrey are residents of DeKalb County.

Plaintiffs have standing to bring this action pursuant to OCGA § 50-3-1 wherein historical monuments in Georgia are to be protected and may not be moved, destroyed, concealed or otherwise disturbed except as provided in said section.

Plaintiffs also have the right and standing to bring this action under the provisions of OCGA § 9-11-60 . . . (a), (b) and (d).

(a) *Sons of Confederate Veterans*. SCV did not assert that it was a citizen, resident, or taxpayer of any county nor did it allege that it was a community stakeholder. Consequently, in accordance with *Sons of Confederate Veterans II*, the organization did not have independent, direct standing.[13] Additionally, SCV did not

---

[13] See id.

assert that it had associational standing, which "permits an organization that has suffered no direct injury to sue on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested, requires the participation of individual members in the lawsuit."[14] SCV did not indicate that it included members that would have citizen/resident/taxpayer status on their own. The assertion that it "operates in DeKalb County" does not confer upon it community stakeholder status. Accordingly, SCV does not have standing to sue.

(b) *Camp #1432.* Camp 1432 did not expressly allege that it has organizational or associational standing but did allege that two of its members are citizens of DeKalb County. Pretermitting whether Camp #1432 has associational standing because of those two resident members, it still has no cognizable injury, which the Supreme Court has clearly held is required to sue in *Sons of Confederate Veterans II*. Allegations that removing the monument violated the plaintiffs' rights and dignity or that the

---

[14] (Citation and punctuation omitted). *Black Voters Matter Fund, Inc. v. Kemp*, 313 Ga. 375, 387 (1) (b) (870 SE2d 430) (2022).

people have a general right to protect monuments do not set forth cognizable injuries.[15]

> To the extent [Camp #1432] rel[ies] on OCGA § 50-3-1, that statute created a public duty on the part of government entities to protect and preserve public monuments and provided a cause of action for a violation of that duty. Because that statute creates a public duty, [Camp #1432] would have standing if, at a minimum, [it] alleged some community stakeholder status that would give them a cognizable injury for their local government's alleged failure to follow the law.[16]

It did not. Therefore, Camp #1432, does not have standing to sue.

(c) *Individual plaintiffs*. Plaintiffs Newton and Autrey do have standing to sue. They are residents of DeKalb County, and therefore, like the citizen plaintiff in *Sons of Confederate Veterans, II*, are community stakeholders to whom the county owed a duty to follow the law. However, the remaining individual plaintiffs, Straut, McConnell, and Howell, are not community stakeholders, and, therefore, lack standing to sue.

---

[15] 315 Ga. at 64 (2) (d).

[16] Id. at 64-65 (2) (d).

Both standing and immunity are threshold questions.[17] We have concluded that the Sons of Confederate Veterans, Camp #1432, Straut, McConnell, and Howell lack standing to pursue their claims. "It is therefore unnecessary to engage in the purely academic exercise of whether [their] claims are barred due to yet another threshold issue. . . . [O]ne is enough.'"[18] At this juncture, therefore, these plaintiffs' action is at an end.

2. Next, we turn to sovereign immunity, also a threshold issue.

"Sovereign immunity is immunity 'from suit,' involving 'actions or claims against the state and its departments, agencies, officers, and employees.'"[19] "The Georgia Constitution provides that the General Assembly may waive the immunity of

---

[17] *Perdue v. Barron*, 367 Ga. App. 157, 160 (1), n.7 (885 SE2d 210) (2023).

[18] Id. See also *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (III) (A) (119 SCt 1563, 143 LE2d 760) (1999) (a reviewing court can choose among the threshold grounds for denying audience to a case on the merits).

[19] *TDGA, LLC v. CBIRA, LLC*, 298 Ga. 510, 511 (783 SE2d 107) (2016), citing Ga. Const. Art. I, Sec. II, Par. IX (a).

counties, municipalities, and school districts by statute."[20] As the Supreme Court of

Georgia recently reiterated in *Bray v. Watkins*,[21]

> the applicability of sovereign immunity to claims brought against the
> State is a jurisdictional issue and therefore, the applicability of sovereign
> immunity is a threshold determination, and, if it does apply, a court lacks
> jurisdiction over the case and, concomitantly, lacks authority to decide
> the merits of a claim that is barred.[22]

"[S]overeign immunity is a threshold determination because — like various other

rules of jurisdiction and justiciability — it is concerned with the extent to which a case

properly may come before a court at all."[23]

In the instant case, plaintiffs sought injunctive relief when they asked that the

court "restore the Obelisk to its former place of honor on the Square of DeKalb

---

[20] *Cameron v. Lang*, 274 Ga. 122, 126 (3) (549 SE2d 341) (2001) ("Suits against public employees in their official capacities are in reality suits against the state and, therefore, involve sovereign immunity."). See also Ga. Constitution IX § II Para IX; OCGA § 36-33-1.

[21] 317 Ga. 703 (895 SE2d 282) (2023).

[22] (Citation and punctuation omitted.) Id. at 704, quoting *McConnell v. Dept. of Labor*, 302 Ga. 18, 18-19 (805 SE2d 79) (2017).

[23] (Citations and punctuation omitted). *Sons of Confederate Veterans III*, 368 Ga. App. at 513.

County," , and defendants claim immunity from suit for injunctive relief. The trial court did not address the threshold jurisdictional issue of sovereign immunity, and as a court for the correction of errors, we cannot reach this issue because it was not ruled on below.[24] Further, the trial court was not authorized to address the merits of the plaintiffs' remaining claims if those claims are barred by sovereign immunity, nor can we reach the merits of those claims until the threshold issue of immunity has been decided.[25]

In sum, consistent with the Supreme Court decisions in *Bray* and *Sons of Confederate Veterans II*, we affirm the trial court's dismissal of the claims of the Sons

---

[24] See *Bradley v. WestRock CP, LLC*, 370 Ga. App. 52, 59 (2) (895 SE2d 318) (2023). Compare *Sons of Confederate Veterans III*, 368 Ga. App. at 512 (the trial court based its dismissal of the petitioner's claim for injunctive relief on both sovereign immunity and standing grounds).

[25] See *Polo Golf & Country Club Homeowners Assn. v. Cunard*, 306 Ga. 788, 790 (1) (a) (833 SE2d 505) (2019) ("Sovereign immunity is a threshold determination that must be ruled upon *prior* to the case moving forward on the more substantive matters.") (emphasis in original). "[I]n the greatest general sense, the State and its agencies are immune from suit unless the legislature specifically states otherwise." *TDGA*, 298 Ga. at 512. Most recently in *Sons of Confederate Veterans III*, 368 Ga. App. at 513, this Court explained that "sovereign immunity may only be waived by an act of the General Assembly specifically providing for waiver and delineating the extent of that waiver, and implied waivers of sovereign immunity are not favored." (Citations and punctuation omitted).

of Confederate Veterans, Camp #1432, Straut, McConnell, and Howell, on the ground that they lack standing; vacate that portion of the order dismissing the claims of Newton and Autrey; and remand the case for the trial court to decide whether the claims of Newton and Autrey are barred by sovereign immunity.

*Judgment affirmed in part, vacated in part, and case remanded. Watkins, J., and Senior Judge C. Andrew Fuller, concur.*